UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SCOTT PHILLIP LEWIS,

                              Plaintiff,

v.                                                        8:24-CV-0849
                                                              (GTS/CFH)

NEW YORK STATE BOARD OF ELECTIONS,

                              Defendant.
_____

SCOTT PHILLIP LEWIS,

                              Plaintiff,

v.                                                          8:24-CV-1036
                                                              (GTS/CFH)

NEW YORK STATE BOARD OF ELECTIONS,

                              Defendant.
_____

APPEARANCES:                                                  OF COUNSEL:

SCOTT PHILLIP LEWIS
  Plaintiff, *Pro Se*
1936 Saranac Ave, #3, PMB 411
Lake Placid, NY 12946

HON. LETITIA A. JAMES                           AIMEE COWAN, ESQ.
  Counsel for Defendant                              Assistant Attorney General
300 South State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

     Currently pending before the Court, in the two above-captioned related civil rights actions

filed by Scott Phillips Lewis ("Plaintiff") against the New York State Board of Elections ("Defendant"), are Plaintiff's motions for a preliminary injunction. Defendant has filed a response (Dkt. No. 11), and the Court has conducted a hearing on Plaintiff's motions. For the reasons set forth below, Plaintiff's motions are denied.

I. **RELEVANT BACKGROUND**

For the sake of brevity, the Court will not summarize the claims asserted in Plaintiff's Complaints, the procedural histories of these actions, or the arguments made by the parties with regard to Plaintiff's motions for a preliminary injunction, because this Decision and Order is primarily intended for the parties, who have demonstrated an adequate understanding of that information.

II. **GOVERNING LEGAL STANDARD**

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: (1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved by the relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (reciting standard limited to first part of second above-stated element and using word "equities" without the word "decidedly"); *accord, Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015); *see also Am. Civil*

*Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (reciting standard including second part of second above-stated element and using words "hardships" and "decidedly"); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in *Winter*]").

With regard to the first part of the first element, a "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *See, e.g., Ligon v. City of New York,* 925 F. Supp.2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); *Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 291 (D. Vt. 2011) (considering the harm to plaintiff and any "countervailing benefit" to plaintiff in balancing the equities); *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 99-CV-9214, 1999 WL 34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); *Arthur v. Assoc. Musicians of Greater New York*, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 801-02 (S.D.N.Y.1967) (explaining that, in order to "balance the equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will

3

be subjected") [internal quotation marks omitted].[1]

With regard to the second part of the first element, "[a] sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord, Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205-06 (2d Cir. 1970).[2] "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp.2d 321, 333-34 (S.D.N.Y. 2009); *see also Semmes Motors, Inc.,* 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[3]

---

[1] *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the *undiscounted* balance of harms favors Y.") [emphasis added].

[2] *See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988); *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir. 1985); *R.R. Yardmasters of Am. v. Penn. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

[3] The Court notes that, under the Second Circuit's formulation of this standard, the requirement of a balance of *hardships* tipping *decidedly* in the movant's favor is added only to the second part of the first element (i.e., the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for litigation), and not also to the first part of the first

With regard to the second element, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

With regard to the third element, the "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." *Black's Law Dictionary* at 1350 (9th ed. 2009).

The Second Circuit recognizes three limited exceptions to the above-stated general standard. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less-rigorous "serious questions" standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Id*. (citing *Able v. United States*, 44 F.3d 128, 131 [2d Cir. 1995]); *see also Otoe-Missouria Tribe of*

---

element (i.e., the existence of a likelihood of success on the merits), which (again) requires merely a balance of *equities* (i.e., hardships and benefits) tipping in the movant's favor. *See Citigroup Global Markets, Inc.*, 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); *cf. Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp.2d 186, 192 (E.D.N.Y. 2013) ("[T]he *Winter* standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits.").

*Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks omitted). This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to non-movant on the merits at trial. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 [2d Cir. 2006]); *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . *and* make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the *status quo*. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).[4] As for the point in time that serves as the *status quo*, the

---

[4] Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).

6

Second Circuit has defined this point in time as "the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F.3d 68, 74, n.7 (2d Cir. 1994); *accord, Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014); *Actavis PLC*, 787 F.3d at 650.

### III.  ANALYSIS

In both of his motions, Plaintiff requests an Order directing the New York State Board of Elections to stay governmental action taken in the public interest pursuant to a statutory scheme. More specifically, in Action No. 24-CV-0849, he requests an Order directing the Board of Elections to cease to enforce N.Y. Election Law § 6-158 (requiring different deadlines for the circulation and filing of party-nominating petitions and the circulation and filing of independent-nominating petitions). And in Action No. 24-CV-1036, he requests an Order directing the Board of Elections to cease to enforce N.Y. Election Law § 16-102 (requiring, in pertinent part, that a proceeding with respect to a nominating petition must be instituted within three business days after the board of elections makes a determination of invalidity with respect to that petition), as interpreted by a New York State court in *Lewis v. N.Y.S. Bd. of Elect.*, Index No. 905570-24, Decision, Order and Judgment, at 2-4 (N.Y.S. Sup. Ct., Schenectady Cnty. July 3, 2024) (Ryba, S.C.J.) (holding that the "institut[ion]" of a proceeding under N.Y. Election Law § 16-102 requires the "service" of instituting papers, which is complete only upon those papers' "actual delivery"). As a result, the Court should not apply the less-rigorous "serious questions" standard but (at the very least) the more-rigorous "likelihood of success" standard. *See, supra,* Part II of this Decision and Order.

However, even that standard is not high enough, under the circumstances. This is

7

because both motions request relief that would effectively provide Plaintiff with all the relief that is sought in his actions (i.e., the certification of his nomination on September 11, 2024). Viewed from another perspective, both motions request relief that would alter the status quo created by the State Court decision (which dismissed Plaintiff's proceeding under N.Y. Election Law § 16-102 challenging the Board of Election's determination of June 13, 2024, ruling that his nominating petition was facially invalid). As a result, to succeed on his motions, Plaintiff must show not merely a likelihood but a "clear or substantial" likelihood that he will succeed on the merits of his claims. *See, supra,* Part II of this Decision and Order.

Even when his papers and arguments are construed with the utmost of special leniency, he has failed to make that showing. More specifically, with regard to Action No. 24-CV-0849, the Court finds that Plaintiff has not shown a "clear or substantial" likelihood that he will succeed on his claim that N.Y. Election Law § 6-158 violates either the First or Fourteenth Amendments by requiring different deadlines for the circulation and filing of party-nominating petitions and the circulation and filing of independent-nominating petitions. *See Kuntz v. New York State Senate*, 113 F.3d 326, 328 (2d Cir. 1997) (affirming district court's granting of defendant's motion for summary judgment on the plaintiff's Fourteenth Amendment equal protection claim and First Amendment political activity claim, because "the differential treatment in terms of both the number of signatures required *and the rate at which signatures must be collected* is not dissimilar from the differential treatment upheld in *Jenness* [*v. Fortson*, 403 U.S. 431 (1971)] and is justified by the same rationale") (emphasis added); *Meadors v. Erie Cnty. Bd. of Elec.*, 21-CV-0982, 2023 WL 4459601, at *10-15 (W.D.N.Y. July 11, 2023) (finding that deadline for submitting an independent nominating petition did not impose a severe burden and was justified

8

by important state interests), *appeal dismissed and judgment vacated as moot*, 2024 WL 3548729 (2d Cir. 2024).

Furthermore, with regard to Action No. 24-CV-1036, the Court finds that Plaintiff has not shown a "clear or substantial" likelihood that he will succeed on his claim that N.Y. Election Law § 16-102 violates either the First or Fourteenth Amendments by requiring that a proceeding with respect to a nominating petition must be "actually delivered" within three business days after the board of elections makes a determination of invalidity with respect to that petition. This "actual delivery" requirement does not appear to be unduly burdensome, and it appears to apply equally to both party candidates and independent candidates. Indeed, the requirement appears to be both well established and long standing.[5]

In response to Plaintiff's argument that the timeliness of his mailed petition under N.Y. Election Law § 16-102 is governed by N.Y. C.P.L.R. 2103(b)(6) (providing, in pertinent part,

---

[5] *See, e.g., Sauberman v. Weinstock*, 123 N.Y.S.3d 767, 769 (N.Y. App. Div., 3d Dep't 2020) ("In order to properly complete service [under Election Law § 16-102], actual delivery must occur no later than the last day upon which the proceeding may be commenced . . . .") (citations omitted); *Wilson v. Garfinkle*, 5 A.D.3d 409, 410 (N.Y. App. Div., 2d Dep't 2004) ("A petitioner raising a challenge under Election Law § 16-102 must commence the proceeding and complete service on all the necessary parties within the period prescribed by Election Law § 16-102 . . . . The order to show cause obtained by the petitioner was signed on February 26, 2004, and provided for overnight delivery upon the necessary parties on or before February 27, 2004. Since service in this Election Law proceeding was not completed until February 27, 2004, the time limits set by Election Law § 16-102 (2) were not satisfied and the proceeding was untimely . . . .") (citations omitted); *cf. Angletti v. Morreale*, 16 N.Y.3d 794, 797-98 (N.Y. 2015) ("Morreale maintains that mailing on the last day of the statutory period [under Election Law § 16-102] was jurisdictionally defective since delivery inevitably would occur outside of the statutory period. However, where the instrument of notice has been delivered by another prescribed method within the statutory period, we have rejected such contentions concerning mailing . . . .") (citations omitted); *Thompson v. N.Y.S. Bd. of Elect.*, 40 N.Y.2d 814, 815 (N.Y. 1976) ("Service by mailing was incomplete under [Election Law § 330(1), governing a proceeding to invalidate a designating petition] so long as the persons to be so served did not receive delivery within the 14-day period.").

9

that "[s]ervice by overnight delivery service shall be complete upon deposit of the paper enclosed in a properly addressed wrapper into the custody of the overnight delivery service for overnight delivery, prior to the latest time designated by the overnight delivery service for overnight delivery"), that argument has properly been found to be without merit.  *See Lewis v. N.Y.S. Bd. of Elect.*, Index No. 905570-24, Decision, Order and Judgment, at 4 (N.Y.S. Sup. Ct., Schenectady Cnty. July 3, 2024) (Ryba, S.C.J.) ("To the extent that petitioner relies on CLPR 2103 for the proposition that service was deemed complete on the date of mailing, not the date of delivery, that rules only applies to the service of interlocutory papers in a pending action after jurisdiction has already been acquired . . . .") (citations omitted).  In support of this ruling, Supreme Court Justice Christina L. Ryba cited two cases, which this Court finds to be instructive.[6]

Indeed, the Court could find only a single case applying N.Y. C.P.L.R. 2103(b)(6) in a proceeding under N.Y. Election Law § 16-102: *Rotanelli v. Westchester Cnty. Bd. of Elect.*, 969 N.Y.S.2d 901, 908 (N.Y. Sup. Ct., Westchester Cnty., 2013).  However, as a threshold matter, the Court finds that case to be distinguishable, because it was expressly not addressing the issue

---

[6]   *See Lester v. NYS Off. of Parks, Rec. & Hist. Pres.*, 60 A.D.3d 680, 681 (N.Y. App. Div., 2d Dep't 2009) ("Contrary to the petitioner's contention, his time to commence the proceeding [to review a determination of the New York State Division of Human Rights pursuant to Executive Law § 298] was not extended by CPLR 2103, which provision for additional time for service by mail is expressly restricted to service 'in a pending action' . . . .") (citations omitted), *leave to appeal denied*, 12 N.Y.3d 12 (N.Y. 2009); and *Jackson v. State of New York*, 85 A.D.2d 818, 818-19 (N.Y. App. Div., 3d Dep't 1981) ("It is urged by claimant that pursuant to CPLR 2103, service of the claim [under Court of Claims Act § 10] was complete on the date it was mailed and, therefore, it was timely served. CPLR 2103 (subd [b]) is concerned with papers to be served in a pending action. In the present case, no action was pending until claimant served his claim instituting the action and, consequently, this section has no application herein . . . .") (citation omitted), *appeal dismissed in part and leave to appeal denied in part*, 56 N.Y.2d 568 (N.Y. 1982).

of whether papers commencing a proceeding under N.Y. Election Law § 16-102 were actually delivered in accordance with time period required by N.Y. Election Law § 16-102; rather, it was merely addressing the issue of whether service of papers commencing a proceeding under N.Y. Election Law § 16-102 complied with an order to show cause.  *See Rotanelli*., 969 N.Y.S.2d at 907 ("Critically, deciding whether the order to show cause was strictly complied with concerns neither whether the respondent actually received notice within the statutory time period, nor whether the type service was one reasonably calculated to arrive within that time period . . . .") (citation omitted).  In any event, even if the case's holding could somehow be interpreted as supporting Plaintiff's argument, the Court finds that interpretation to fly in the face of both the weight of better-reasoned authority[7] and the express language of the rule.[8]

Finally, as an alternative ground for denying Plaintiff's motions, the Court relies on each of the four arguments advanced by Defendant in its letter-response: (1) Defendant is entitled to sovereign immunity pursuant to the Eleventh Amendment, and no exception to that immunity exists here; (2) Plaintiff has failed to show that he will suffer irreparable harm, because he unreasonably and inexcusably delayed in filing his motions (causing unequivocal prejudice to Defendant and potentially the public); (3) Plaintiff has failed to establish a clear or substantial

---

[7]     *See, supra,* notes 5 and 6 of this Decision and Order.

[8]     *See* N.Y. C.P.L.R. 2103(b) (setting forth rule regarding the service of papers "in a pending action").  Contrary to Plaintiff's argument that his proceeding under N.Y. Election Law § 16-102 was "pending" when he attempted to serve Defendant with papers commencing that proceeding, the Court finds that the papers commencing that proceeding needed to be served in order for that proceeding to be "instituted" for purposes of the relevant statute.  *See* N.Y. Election Law § 16-102 (requiring, in pertinent part, that a proceeding with respect to a nominating petition must be "instituted" within three business days after the board of elections makes a determination of invalidity with respect to that petition).

likelihood that he is likely to succeed on the merits on his claims with regard N.Y. Election Law § 6-158(9) for the reasons stated in *Brown v. Erie Cnty.*, 197 A.D.3d 1505 (N.Y. App. Div. 4th Dep't 2021), and on the merits of his claims with regard to N.Y. Election Law § 16-102 because of the *Rooker-Feldman* doctrine; and (4) the public interest does not weigh in favor of a preliminary injunction but weighs decidedly against it under the circumstances. (Dkt. No. 11, at 8-25.)

For all of these alternative reasons, Plaintiff's motions are denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motions for a preliminary injunction are **DENIED**.

Dated: September 10, 2024
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge